**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02116-NYW-NRN

SANDRA WINGARD, and
KENNETH WINGARD,

    Plaintiffs,

v.

TBK BANK, SSB,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [Doc. 35, filed August 1, 2024]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the record before the Court, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiffs Sandra Wingard and Kenneth Wingard ("Plaintiffs") seek to recover funds stolen from their bank accounts with Defendant TBK Bank, SSB. ("Defendant" or "TBK"). *See generally* [Doc. 28]. Plaintiffs allege that, after Defendant suffered a data breach in December 2021, unknown third parties made unauthorized withdrawals from Plaintiffs' accounts. [*Id.* at ¶¶ 6–8]. In April 2022, the fraudsters transferred $66,500 from Plaintiffs' savings account to their checking account. [*Id.* at ¶ 7]. Between April and August 2022,

Defendant allegedly paid counterfeit checks against Plaintiffs' checking account totaling $93,891.62. [*Id.* at ¶ 8]. Plaintiffs maintain that they authorized none of these transactions. [*Id.* at ¶¶ 7–8]. Plaintiffs allege, however, that Defendant refused to fully reimburse Plaintiffs for the loss because Plaintiffs failed to timely notify Defendant of the unauthorized withdrawals. [*Id.* at ¶¶ 12, 17].

Plaintiffs bring two claims. First, they assert that Defendant violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693–93r, by holding Plaintiffs liable for unauthorized transactions and failing to adequately respond to the unauthorized transactions ("Count One"), [Doc. 28 at ¶¶ 19–36]. Second, they bring a claim under the Colorado Uniform Commercial Code ("UCC"), Colo. Rev. Stat. § 4-4-401(a) (2024), based on Defendant's charging of Plaintiffs' checking account for transactions that were not "properly payable" ("Count Two"), [Doc. 28 at ¶¶ 37–41]. Defendant now seeks summary judgment on both claims. *See* [Doc. 35]. Plaintiffs have responded in opposition, [Doc. 38], and Defendant has replied, [Doc. 43]. The Court considers the Parties' arguments below.

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

2

When a defendant seeks summary judgment based on an affirmative defense, the plaintiff "need only identify a disputed material fact relative *to the affirmative defense*" to defeat the motion for summary judgment. *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1122 (10th Cir. 2021). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (cleaned up). A sufficient showing includes establishing "*all* of the essential elements of the . . . defense." *Id.* (quotation omitted). In considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following material facts are drawn from the summary judgment record and are undisputed unless otherwise noted.

1.  In 2022, Plaintiffs maintained a joint checking account and a joint savings account with TBK. [Doc. 35 at ¶ 1; Doc. 38 at ¶ 1; Doc. 35-5 at 5]; *see also* [Doc. 35-3].

2.  From April 2022 to September 2022, TBK mailed Plaintiffs monthly bank statements to the address associated with Plaintiffs' accounts. [Doc. 35 at ¶ 3; Doc. 28 at ¶ 3; Doc. 35-1 at ¶ 8; Doc. 35-3].[1]

---

[1] Plaintiffs deny receiving the statements, but they do not dispute that the mailing address was correct. [Doc. 38 at ¶ 3]. Nor do they provide evidence to controvert Defendant's affidavit evidence that TBK mailed Plaintiffs monthly statements, which is corroborated

3

3. On August 26, 2022, Plaintiffs discovered unauthorized transactions on their accounts when they visited the TBK branch in Buena Vista, Colorado to make a withdrawal. Plaintiffs filed affidavits of alteration that same day. [Doc. 35 at ¶ 4; Doc. 38 at ¶ 4; Doc. 35-5 at 5; Doc. 35-6 at 5].

4. The Court adopts the chart used in the Motion to summarize the transactions at issue:

| Savings Account | | | | |
|---|---|---|---|---|
| **Post Date** | **From** | **To** | **Type** | **Amount** |
| Apr. 19, 2022 | Savings | Checking | Telebank Transfer | $35,000 |
| May 10, 2022 | Savings | Checking | Telebank Transfer | $22,000 |
| Aug. 15, 2022 | Savings | Checking | Telebank Transfer | $9,500 |
| **Checking Account** | | | | |
| **Check Date** | **From** | **To** | **Type** | **Amount** |
| Apr. 8, 2022 | Tommie Penson | Tommie Penson | Paper Check | $4,000.00 |
| Apr. 20, 2022 | Tommie Penson | Mark McVay | Paper Check | $7,443.98 |
| Apr. 25, 2022 | Tommie Penson | Tommie Penson | Paper Check | $12,443.98 |
| May 7, 2022 | Tommie Penson | Tommie Penson | Paper Check | $9,735.00 |
| May 9, 2022 | Tommie Penson | Tommie Penson | Paper Check | $5,000.00 |
| May 13, 2022 | Tommie Penson | Tommie Penson | Paper Check | $19,423.00 |
| May 21, 2022 | Tommie Penson | Tommie Penson | Paper Check | $19,432.00 |
| June 3, 2022 | Tommie Penson | Tommie Penson | Paper Check | $6,721.14 |
| Aug. 17, 2022 | Jimmy Applewhite | Jimmy Applewhite | Paper Check | $900.87 |

---

by the statements themselves. [Doc. 35-1 at ¶ 8; Doc. 35-3]; *see also Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment."). Accordingly, the Court deems this fact undisputed. *See* Fed. R. Civ. P. 56(e)(2).

| Aug. 17, 2022 | Jimmy Applewhite | Jimmy Applewhite | Paper Check | $8,800.65 |

[Doc. 35 at ¶ 5; Doc. 38 at ¶ 5; Doc. 35-3 at 12].[2]

5. The withdrawals from Plaintiffs' savings account transferred funds electronically to Plaintiffs' checking account ("Savings Transactions"). [Doc. 35 at ¶ 6; Doc. 38 at ¶ 6; Doc. 35-6 at 4].

6. The withdrawals from Plaintiffs' checking account were initiated by paper checks ("Check Transactions"). None of the Check Transactions were subject to electronic conversion. [Doc. 35 at ¶ 7; Doc. 38 at ¶ 7; Doc. 35-1 at ¶ 11]; *see also* [Doc. 35-3].

7. TBK reimbursed Plaintiffs $9,700.87 for the two Check Transactions on August 17, 2022. [Doc. 35 at ¶ 8; Doc. 38 at ¶ 8; Doc. 35-1 at ¶ 12; Doc. 35-4 at 3]. In reliance on the Terms and Conditions, TBK did not reimburse Plaintiffs for the remaining transactions because they occurred more than 60 days before the day Plaintiffs reported them, August 26, 2022. [Doc. 35 at ¶ 8; Doc. 38 at ¶ 8; Doc. 35-1 at ¶ 12; Doc. 35-4 at 3].

## ANALYSIS

**I.     EFTA Claim**

The EFTA seeks to protect consumers who "use . . . electronic systems to transfer funds." 15 U.S.C. § 1693. To that end, it sets forth "a basic framework establishing the

---

[2] Plaintiffs deny the chart as "incorrect" but dispute only the amount of the May 21, 2022 transaction. [Doc. 38 at ¶ 5]. Record evidence confirms that Plaintiffs have identified the correct amount of the May 21, 2022 transaction. [Doc. 35-3 at 12]. Because Plaintiffs dispute none of the other transaction dates or amounts, the Court deems the rest of the chart undisputed. *See* Fed. R. Civ. P. 56(e)(2).

rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." § 1693(b). Plaintiffs allege that TBK violated the EFTA's error resolution provisions, § 1693f, and its implementing regulation's ("Regulation E") limitations on consumer liability, 12 C.F.R. § 205.6(b)(3); *see* [Doc. 28 at ¶¶ 25–32]. To assert claims under either theory, though, Plaintiffs must point to an "unauthorized electronic fund transfer." 15 U.S.C. § 1693f(f)(1); 12 C.F.R. § 205.6(b)(3). The EFTA defines an unauthorized electronic transfer as "an *electronic* fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer *receives no benefit*." 15 U.S.C. § 1693a(12) (emphasis added). In the Motion, Defendant argues that neither set of transactions are actionable "unauthorized electronic transfers" because the Check Transactions were not "electronic" and the Savings Transactions conferred a "benefit" to Plaintiffs. [Doc. 35 at 6–9].

Plaintiffs concede that Count One fails with respect to the Check Transactions. [Doc. 38 at 9–10]. The EFTA excludes paper checks from its definition of electronic fund transfer. 15 U.S.C. § 1693a(7). Regulation E provides an exception for so-called electronic check conversions, where a check is "used as a source of information to initiate a one-time electronic fund transfer." 12 C.F.R. § 1005.3(b)(2)(i). But the Parties agree that no such conversion occurred here. [Doc. 35 at 7; Doc. 38 at 10 n.1]. The Court therefore agrees with the Parties that the Check Transactions were not electronic and cannot sustain an EFTA claim. Accordingly, Count One is **DISMISSED** with respect to the Check Transactions.

As for the Savings Transactions, Defendant argues that Plaintiffs received a benefit because the funds were transferred from one of Plaintiffs' accounts to another. [Doc. 35 at 8–9]. Defendant reasons that this means "Plaintiffs received the benefit of the transactions at issue" because "the funds were still within their possession and Plaintiffs[] suffered no loss as a result of the transfers." [*Id.* at 9]. Plaintiffs counter that this argument "flies in the face of common sense." [Doc. 38 at 5]. Without the Savings Transactions, Plaintiffs argue, their checking account would have lacked sufficient funds for the thieves to execute the Check Transactions. [*Id.* at 5–6].

At least two other courts have held that unauthorized transfers between a consumer's bank accounts, especially as part of a larger fraud scheme, do not confer a benefit under the EFTA. First, in *Moore v. JPMorgan Chase Bank, N.A.*, the district court found that the plaintiffs adequately stated an EFTA claim based on unauthorized transfers from their savings account to their checking account, transfers that enabled thieves to wire the money out of the checking account and complete the theft. No. 22-cv-01849-JSC, 2022 WL 16856105, at *1–2 (N.D. Cal. Nov. 10, 2022). The court observed that "without the unauthorized (and unknown) transfer of money from their savings to their checking account there would not have been sufficient monies in the checking account to fund the unauthorized (and unknown) wire transfers. Such a consequence is a detriment, not a benefit." *Id.* at *1 (citation omitted). Similarly, in *New York ex rel. James v. Citibank*, the complained-of transactions were "intrabank transfers"—such as from a consumer's savings account to his checking account—where "scammers consolidate funds from multiple accounts into one account in order to steal a larger sum of money without the need for multiple Payment Orders." No. 24-cv-00659-JPO, 2025 WL 251302, at *16

7

(S.D.N.Y. Jan. 21, 2025). Relying in part on *Moore*, the court held that "unauthorized consolidations of consumers' funds without their knowledge in order to facilitate easier and less detectable fraud[ ]occurred without any 'benefit' to the consumer." *Id.* at *17.

This Court respectfully concurs with the conclusions reached in *Moore* and *Citibank*. As *Citibank* observes, the few courts to construe "benefit" under the EFTA have considered the "downstream effects" of the transaction. *Id.*; *see also Aikens v. Portfolio Recovery Assocs.,* 716 F. App'x 37, 40 (2d Cir. 2017) (finding benefit when bank charged consumer's account to offset some of her credit card debt held by the bank, because the consumer received the benefit of reduced debt); *Guarnieri v. Be Money Inc.*, No. 2:22-cv-01824-FWS-KS, 2022 WL 11381916, at *5 (C.D. Cal. Oct. 18, 2022) (finding benefit when hotel charged plaintiff for damage to hotel room but plaintiff received benefit of avoiding liability). Accounting for the downstream effects of the Savings Transactions, Plaintiffs plainly received no benefit from those transfers. As in *Moore* and *Citibank*, the Savings Transactions were an intermediate step that led to the fraudulent Check Transactions and Plaintiffs' loss of tens of thousands of dollars. Even if Plaintiffs reaped a brief, unrealized benefit from money being moved between their accounts before it was stolen, they were unaware of it. *Cf. Park v. Webloyalty.com, Inc.*, 685 F. App'x 589, 592 (9th Cir. 2017) (finding no benefit when plaintiff was unaware he had subscribed to coupon savings program, so he could not have taken advantage of the coupons). Accordingly, a reasonable jury could conclude that Plaintiffs received no benefit from the Savings Transactions and that Plaintiffs may bring an EFTA claim based on those transfers. The Motion is respectfully **DENIED** as to this portion of Count One.

**II.    UCC Claim**

Although Plaintiffs concede that the Check Transactions are not actionable under Count One, they argue that Count Two allows them to recover for the Check Transactions under the UCC.  [Doc. 38 at 10–11].  Colorado's UCC provides that a bank may charge a customer's account only for items that are "properly payable."  Colo. Rev. Stat. § 4-4-401(a).  An unauthorized check is not properly payable.  *Id.*  When a customer is charged for an unauthorized check, the UCC gives the customer one year to notify the bank that the item was not properly payable.  § 4-4-406(f).  If the customer fails to notify the bank within one year of the date when the statement with the error became available, the UCC precludes the customer from recovering from the bank the cost of the unauthorized payment.  *Id.*  But the UCC also permits parties to modify its terms by contract.  § 4-4-103(a).

Defendant asserts that the Parties made such a modification here.  [Doc. 35 at 9–12].  TBK's Terms and Conditions for its accountholders require an accountholder to notify the bank of an error within 60 days of TBK's issuing of the statement with the error.  [Doc. 35-2 at 6–7, 15].  And because the Terms and Conditions provide that a customer agrees to their terms by using a TBK account, [*id.* at 3], Defendant argues that Plaintiffs agreed to the 60-day notice period, [Doc. 43 at 5].  For Check Transactions that occurred more than 60 days before August 26, 2022, Defendant concludes that Plaintiffs are precluded from attempting to recover under the UCC.  [Doc. 35 at 10–12; Doc. 43 at 5–7].  Defendant points to several decisions in other UCC jurisdictions approving contractual provisions that shorten the UCC's one-year notice period for unauthorized payments.  [Doc. 35 at 10]; *see also, e.g.*, *Aliaga Med. Ctr., S.C. v. Harris Bank N.A.*, 21 N.E.3d 1203, 1210–11

9

(Ill. App. Ct. 2014) (upholding 60-day notice period in account agreement); *Nat'l Title Ins. Corp. Agency v. First Union Nat'l Bank*, 559 S.E.2d 668, 671–72 (Va. 2002) (same); *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 95–97 (Tex. 2000) (same).

Plaintiffs respond that Defendant cannot obtain summary judgment on Count Two because it has not shown that Plaintiffs agreed to the Terms and Conditions. [Doc. 38 at 10]. In other words, they argue that the Terms and Conditions do not form an enforceable contract between the Parties, so the UCC's default one-year notice period applies.

Under Colorado law, "[t]he existence of a contract is a question of fact." *Tuscany Custom Homes, LLC v. Westover*, 490 P.3d 1039, 1049 (Colo. App. 2020); *see also Extreme Constr. Co. v. RCG Glenwood, LLC*, 310 P.3d 246, 254 (Colo. App. 2012) ("The issue of whether an offer was accepted is a question of fact."). An enforceable contract requires mutual assent—i.e., offer and acceptance—and consideration. *Indus. Prods. Int'l, Inc. v. Emo Transp., Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (citing *Denver Truck Exch. v. Perryman*, 307 P.2d 805 (Colo. 1957)). "Acceptance of an offer is generally defined as words or conduct that, when objectively viewed, manifests an intent to accept an offer." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). "While assent may be implied from the totality of circumstances and the acts of the parties, it must appear in some form." *Vernon v. Qwest Commc'ns Int'l*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) (citing *Mumm v. Adam*, 307 P.2d 797, 801 (Colo. 1957)).

According to TBK's Terms and Conditions, merely using an account with TBK constitutes assent to the Terms and Conditions. [Doc. 35-2 at 3]. But regardless of the "form" taken by an offeree's assent, a party cannot assent to terms when it lacks notice of those terms. *Cf. Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021, 1026 (D. Colo.

10

2012) (suggesting that "objective indicia of assent can be overcome where the terms of the agreement were inconspicuous or concealed from the offeree");[3] *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010) (holding that when contracting parties attempt to incorporate external terms into their contract, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms" (quotation omitted)). Courts have confronted similar issues in internet contracts. *See, e.g.*, *Vernon*, 857 F. Supp. 2d at 1149 (applying Colorado law). Like TBK's Terms and Conditions, some internet agreements provide that a user assents to a digital product's terms and conditions by using the product. *Id.* In these cases, "the threshold issue is . . . did the consumer have reasonable notice, either actual or constructive, of the terms of the putative agreement and did the consumer manifest assent to those terms." *See Macasero v. ENT Credit Union*, 533 P.3d 982, 988 (Colo. App. 2023) (quoting *Vernon*, 857 F. Supp. 2d at 1149).

TBK has failed to carry its burden at summary judgment to establish that there is no genuine issue of material fact that the Wingards had reasonable notice, actual or constructive, of TBK's Terms and Conditions. Plaintiffs expressly argue that there is no evidence in the record that TBK's Terms and Conditions were ever given or sent to Plaintiffs by Defendant, or that the Parties ever agreed that they would govern the

---

[3] In *Grosvenor*, the court observed that it could not find Colorado authority explicitly endorsing this proposition, though it noted the proposition is not "particularly remarkable." 854 F. Supp. 2d at 1026. Although this Court's research revealed no Colorado decisions repeating this exact phrase from *Grosvenor*, the Colorado Court of Appeals recently adopted the reasoning used in *Vernon*, another federal case that incorporated *Grosvenor*'s analysis of contracts where an offeree lacks notice of the contractual terms. *See Macasero v. ENT Credit Union*, 533 P.3d 982, 988 (Colo. App. 2023) (citing *Vernon*, 857 F. Supp. 2d at 1149–50 (finding *Grosvenor*'s analysis "equally applicable" to facts at issue)).

11

relationship. [Doc. 38 at 10–11]. Defendant replies that Plaintiffs "have been banking customers with TBK for almost eight years." [Doc. 43 at 5]. But such argument misses the mark with respect to the threshold inquiry of notice. TBK has put forward no evidence suggesting that it ever provided Plaintiffs with actual notice by supplying them a copy of the Terms and Conditions. Nor has it pointed to other facts that would have placed Plaintiffs on constructive notice by alerting them to the existence of the Terms and Conditions. *See Macasero*, 533 P.3d at 989 (recognizing that inquiry notice, a form of constructive notice, "requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further" (quotation omitted)). Plaintiffs' bank statements include a version of the 60-day notice requirement, *e.g.*, [Doc. 35-3 at 3, 7, 11], but TBK offers no evidence that the Terms and Conditions were somehow incorporated therein—and it does not appear from the face of the bank statements that they were. Similarly, TBK provides no legal authority as to whether the statements' language regarding the 60-day notice requirement amounts to notice of the Terms and Conditions. And at this stage, the Court is bound to view the record, including the bank statements, in the light most favorable to Plaintiffs. *See Banner Bank*, 916 F.3d at 1326.

For that same reason, the Court cannot simply credit TBK's assertion that assent to the Terms and Conditions is a prerequisite to using an account with TBK. [Doc. 35 at 10; Doc. 43 at 5]. As the Parties' briefing establishes, Plaintiffs have maintained accounts at TBK's Buena Vista branch since 2011, but TBK only acquired the branch in 2016. [Doc. 38 at 10; Doc. 43 at 5].[4] There is no evidence in the record as to how TBK presented the

---

[4] For purposes of this Motion only, the Court construes these statements as judicial admissions. *United States v. Nelson*, 868 F.3d 885, 890–91 (10th Cir. 2017) ("[S]tatements in briefs . . . may, in [the] court's discretion, operate as judicial admissions

Terms and Conditions to existing accountholders during the acquisition, or whether those terms differed from the terms used by the previous owner of the branch.  To be sure, Defendant may believe it unlikely that Plaintiffs banked with TBK for seven years while avoiding any constructive notice of TBK's Terms and Conditions.  But an unsupported belief is an insufficient basis for summary judgment.  Because Plaintiffs' assent to the Terms and Conditions remains a genuine dispute of fact material to Defendant's affirmative defense, *Hamric*, 6 F.4th at 1122, the Motion is respectfully **DENIED** as to Count Two.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [Doc. 35] is **GRANTED in part** and **DENIED in part**;

(2) Count One is **DISMISSED with prejudice** with respect to the Check Transactions;

(3) The Motion is **DENIED** with respect to Count Two and Count One insofar as Plaintiffs' EFTA claim is based on the Savings Transactions; and

(4) A telephonic Status Conference is **SET** for March 11, 2025 at 10:00 a.m. for purposes of setting a Final Pretrial/Trial Preparation Conference and trial in this matter.  Counsel for the Parties shall participate using the following dial-in information:  571-353-2301; Access Code: 783456374.

---

that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." (quotation omitted)).

13

DATED:  February 25, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge